UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
DAVID LEE,                                             :
                                                       :    **OPINION AND ORDER**
                    Plaintiff,                         :
                                                       :    06 Civ. 14251 (SAS)
         - against -                                   :
                                                       :
GREAT LAKES DREDGE & DOCK                              :
COMPANY,                                               :
                                                       :
                    Defendant.                         :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

David Lee brings suit under section 688 of the Jones Act[1] and under general maritime law to recover damages for personal injuries he suffered while working on a Coastal Research Amphibious Buggy ("CRAB"). Defendant Great Lakes Dredge & Dock Company ("Great Lakes") moves for summary judgment as to all claims. It contends that because the CRAB is not a vessel, Lee is not a seaman and cannot bring an action under the Jones Act or general maritime law.[2]

---

[1] 46 U.S.C. App. § 688 (2003). On October 6, 2006, the Jones Act was recodified as 46 U.S.C. § 30104.

[2] *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem.") at 2.

1

For the reasons stated below, Great Lakes' motion for summary judgment is denied.

## II. BACKGROUND

### A. Facts

In December of 2003, Great Lakes was engaged in a beach nourishment and restoration project at Fire Island, New York (the "Fire Island Project").[3] The purpose of the project was to repair and reconstruct beach areas that had been eroded by storms, weather, and waves. In November, 2003, Great Lakes hired David Lee to work on the Fire Island Project.[4] His duties included operating and maintaining the CRAB.[5]

The CRAB is a three-wheeled, amphibious vehicle with an operator's platform perched upon three tall legs.[6] An inflatable rubber tire is attached to the bottom of each leg. The CRAB is powered by a diesel engine that drives a hydraulic pump on the operator's platform that in turn drives a hydraulic motor

---

[3] *See* Defendant's 56.1 Statement of Uncontested Material Facts ("Def. 56.1") ¶ 2; Plaintiff's Response to 56.1 Statement of Uncontested Material Facts ("Pl. 56.1") ¶ 2.

[4] *See* Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.

[5] *See id.*

[6] *See* Def. 56.1 ¶ 5.

2

attached to each rubber tire.[7] The CRAB moves by the rotation of its rubber tires on the sea bottom or on land.[8]

On or about December 14, 2003, Lee was injured in the course of his duties as CRAB operator.[9] The Injury Report states that he was injured after the CRAB got stuck approximately one hundred feet offshore. Lee had to abandon the CRAB and jump into the rough waters, and he was pulled ashore while holding on to a retrieval line.[10] Following the accident, Lee received worker's compensation benefits from Great Lakes pursuant to the Longshore Harbor Workers' Compensation Act.[11]

**B.     Procedural History**

On November 8, 2006, Lee commenced this action by filing a

---

[7]     *See id.* ¶ 6.

[8]     *See id.* ¶ 7. Plaintiff denies that the CRAB moves on land. *See* Pl. 56.1 ¶ 7. However, as the name Coastal Research Amphibious Buggy suggests, it is capable of moving both on land and in water. In any event, this contested issue of fact is not material to the instant dispute.

[9]     *See* Def 56.1 ¶ 3; Great Lakes Dredge & Dock Company First Notice of Employee Injury or Illness ("Injury Report"), Ex. D to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.").

[10]    *See* Injury Report.

[11]    33 U.S.C. § 901 et seq.; *see* Def. 56.1 ¶ 1.

Complaint seeking damages for (1) negligence under section 688 of the Jones Act and (2) maintenance, cure, and wages under general maritime law.[12] Great Lakes has asserted a counterclaim, stating that if Lee is entitled to sue under the Jones Act or general maritime law, Great Lakes is entitled to repayment of all benefits paid under the Longshore Harbor Workers' Compensation Act.[13] Great Lakes also asserts a lien on any recovery by Plaintiff.[14] On August 15, 2007, Great Lakes moved for summary judgment on the ground that Lee had no substantial connection to a "vessel in navigation" and therefore is not a seaman.[15]

## III. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[12] *See* Complaint.

[13] *See* Answer ¶ 17. Because it is not yet determined whether Lee has a Jones Act or general maritime claim, Great Lakes' request for repayment of benefits cannot be addressed at this time.

[14] *See id.*

[15] Def. Mem. at 8.

4

party is entitled to judgment as a matter of law."[16] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[17] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[18] "It is the movant's burden to show that no genuine factual dispute exists."[19]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "'some metaphysical doubt as to the material facts,'"[20] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[21] However, "'all that is required [from a non-moving party] is that sufficient

---

[16] Fed. R. Civ. P. 56(c).

[17] *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[18] *Bouboulis v. Transport Workers Union*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[19] *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[20] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[21] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[22]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[23] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[24] Summary judgment is therefore inappropriate "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."[25]

**B.  The Jones Act**

"The Jones Act provides a cause of action in negligence for 'any

---

[22]  *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[23]  *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

[24]  *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[25]  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

6

seaman' injured 'in the course of his employment.'"[26] The purpose of the Act is "to protect sea-based maritime workers, who owe their allegiance to a vessel, and not to land-based employees, who do not."[27] To qualify for seaman status, a person must have an "employment-related connection to a vessel in navigation."[28] The test for satisfying this requirement is twofold: "[1] [t]he worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and [2] the worker must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[29]

The Jones Act does not define the term "vessel." However, section 3 of title 1 of the United States Code ("section 3") defines the term for the purpose of the Jones Act.[30] Section 3 states: "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a

---

[26] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. App. § 688(a)).

[27] *Id.* at 376.

[28] *Wilander*, 498 U.S. at 355.

[29] *Chandris*, 515 U.S. at 376.

[30] *See Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 491 (2005).

7

means of transportation on water."[31] In *Stewart v. Dutra Construction Company*, the Supreme Court clarified that under section 3, "a 'vessel' is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment."[32] The Supreme Court stated that "[t]he question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one."[33] The Court noted that "structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time."[34] Thus, watercrafts that have "been permanently moored or otherwise rendered practically incapable of transportation or movement" are not vessels.[35] However, a watercraft does not have to be in motion to satisfy the "in navigation" requirement.[36] "Instead, the 'in navigation' requirement is an element of the vessel status of a watercraft." The

---

[31] 1 U.S.C. § 3.

[32] *Stewart*, 543 U.S. at 497 (holding that a dredge is a vessel).

[33] *Id.* at 496.

[34] *Id.* (citations omitted). *Accord Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19 (1926) (wharfboat secured to the shore by cables, without machinery or power for propulsion, and connected to the city's water, electricity, and telephone systems, was not a vessel).

[35] *Stewart*, 543 U.S. at 494.

[36] *Id.* at 495-96.

8

structure needs to be "practically capable of maritime transportation."[37]

The Supreme Court has explained the reason for requiring a substantial connection to vessel in navigation:

> The fundamental purpose ... is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.[38]

## IV. DISCUSSION

Lee contends that not only was the CRAB capable of being used to transport equipment and people over water, but, in fact, it did do so. "In addition to its use for water surveys, the CRAB transported ... 3-4 people on water, either for doing actual survey work or moving people to a crew boat. In addition, the CRAB was used on the water to transport equipment to a crew boat."[39] Being capable of transporting people and equipment, the CRAB satisfies the "maritime transportation" requirement under *Stewart*.

Great Lakes, in turn, contends that passengers or equipment on the

---

[37] *Id.* at 497.

[38] *Chandris*, 515 U.S. at 368.

[39] Pl. Mem. at 7. *See also* 6/28/07 Deposition of David Lee ("Lee Dep."), Ex. A to Pl. Mem., at 88:13-89:17.

9

CRAB are not transported "on water," but rather "above the water."[40] Thus, Great Lakes attaches great importance to the term "on water" found in section 3. It notes that the CRAB consists of a platform atop a twenty-five-foot steel tripod. Because the CRAB moves by rolling on the seabed, it can only transport people and equipment in waters that are less deep than the height of the CRAB itself.[41] Specifically, Great Lakes notes that the CRAB is designed not to float, but rather to remain constantly in contact with the seabed.[42]

Great Lakes gives a crabbed reading to the phrase "on water." Its interpretation would exclude many common watercrafts from qualifying as vessels. Hovercrafts – which transport people "above" the water on a cushion of air – and submarines – which transports people "under" water – would be excluded. A broader reading of the phrase "on water" is required. Such a reading is consistent with *Stewart's* holding that under section 3, "a 'vessel' is any watercraft practically capable of maritime transportation."[43] In fact, courts have often used prepositions other than "*on* water" when explaining why a particular

---

[40] Reply Memorandum of Law in Support of Motion For Summary Judgment at 3.

[41] *Id.* at 2-3.

[42] *Id.* at 2.

[43] 543 U.S. at 497.

type of watercraft qualifies as a vessel under section 3. For example, in *Stewart*, the Supreme Court explained that a dredge qualified as a vessel because it transported "equipment and workers *over* water."[44] Likewise, in *Uzdavines v. Weeks Marine, Inc.*, the Second Circuit explained that the dredge at issue in that case could "transport equipment and workers *across* navigable waters.[45]

Moreover, this reading of section 3 is consistent with the broad definition that courts, generally, have given to the term vessel. Noting "the seeming incongruity of grouping dredges alongside more traditional seafaring vessels under the maritime statutes," the Supreme Court in *Stewart* explained that Congress and the courts have long interpreted the maritime statutes broadly in order to classify new types of watercraft as vessels. Quoting a Court of Appeals case from 1896, the Supreme Court asserted that "'so far-reaching are the principles which underlie the jurisdiction of the courts of admiralty that they adapt themselves to all new kinds of property and new sets of operatives and new conditions which are brought into existence in the progress of the world.'"[46]

Furthermore, holding that the CRAB qualifies as a vessel under the

---

[44] *Id.* at 495 (emphasis added).

[45] 418 F.3d 138, 144 (2d Cir. 2005) (emphasis added).

[46] *Stewart*, 543 U.S. at 497 (quoting *Saylor v. Taylor*, 77 F. 476, 479 (4th Cir. 1896)).

11

Jones Act is consistent with the purpose of the Act. It was enacted by Congress as part of an effort to provide "heightened legal protections" to seamen "because of their exposure to the 'perils of the sea.'"[47] The Supreme Court has noted that "[t]raditional seamen's remedies . . . have been 'universally recognized as . . . growing out of the status of the seaman and his peculiar relationship to the vessel, and as a feature of the maritime law compensating or offsetting the special hazards and disadvantages to which they who go down to the sea in ships are subjected.'"[48] Employees on CRABs may be exposed to the precise perils for which Congress has provided heightened legal protection. Here, Lee certainly experienced the perils of the sea when the CRAB became stuck on the ocean floor one hundred feet off the beach and Lee had to swim back to land during inclement weather conditions, including high waves, strong winds, snow, sleet, and cold temperatures.[49]

## VI. CONCLUSION

Because the CRAB qualifies as a vessel for purposes of the Jones Act, Great Lakes' motion for summary judgment is denied. A conference is

---

[47] *Chandris*, 515 U.S. at 354 (citations omitted).

[48] *Wilander*, 498 U.S. at 354 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104 (1946) (Stone, C.J., dissenting)).

[49] *See* Injury Report; Lee Dep. at 46:18-47:18.

12

scheduled for November 29, 2007 at 3 p.m. The Clerk of the Court is directed to close the motion [Docket No. 12].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
November 15, 2007

## -Appearances-

**For Plaintiff David Lee:**

Michael H. Zhu, Esq.
Zhu & Tsang, P.C.
14 Wall Street, 22nd Floor
New York, New York 10005
(212) 227-2245

Rudolph V. DeGeorge, II, Esq.
Barish Rosenthal
Bell Atlantic Tower, Suite 4020
1717 Arch Street
Philadelphia, Pennsylvania 19103
(215) 923-8900

**For Defendant Great Lakes Dredge & Dock Company:**

John R. Geraghty, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
425 Eagle Rock Avenue, Suite 302
Roseland, New Jersey 07068
(973) 618-4100